The opinion of the court was delivered by
Poché, J.
The city seeks by mandamus, under the provisions of Act 133 of 1888, to compel the defendant company to construct a certain embankment on the outskirts of the city, in accordance with an ordinance numbered 7483, adopted by the City Council in December,, 1881.
The proceeding was met by a peremptory exception, based on the ground that there is no warrant in law for the application of the writ of mandamus in the case set forth in relator’s petition. The exception was maintained, and relator appeals.
The pivotal allegations of the petition are substantially that under the ordinance herein sought to be enforced, the railroad company obtained certain valuable franchises, among which was the right to occupy for its purposes certain streets of the city and certain embankments constructed within its limits, in consideration of which the said company agreed to continue a pre-existing embankment, so as to extend it on and through a certain thoroughfare known as Florida Walk, from its intersection with Peoples’ Avenue to the Fisherman’s Canal, on the lower limits of the City of New Orleans, and that the company has failed to comply with its obligations in the premises.
*140 The work required of the company is designated in the ordinance •as follows:
“ From the intersection of the embankment of the canal of the People’s Avenue and Lake Pontehartrain, to the intersection of said People’s Avenue Canal embankment with Florida Walk, which said embankment shall be elevated above high water mark, according to lines and levels to be furnished by the City Surveyor, and to be kept in good repair by said company at its expense, with the right to deepen said People’s Avenue Canal, to obtain earth for the said elevation and repairs, and that said company shall continue said embankment along Florida Walk, from the intersection of People's Avenue to the Fisherman’s Canal, lower limits of the City of New Orleans, in •accordance with lines and levels to be furnished by the City Surveyor. ’ ’
The words herein italicized by us are descriptive of the work sought to be enforced, and the specifications of the same, prepared by the City Surveyor, are annexed to and made part of relator’s petition.
Defendant’s contention, under its exception, is that the provisions of Act 133 of 1888 do not contemplate or justify recourse on the part of the city to the writ of mandamus to coerce the company to construct a new embankment or levee as provided for in that portion of the ordinance now under discussion.
On that point the act reads:
“ That in cases where any corporation has heretofore contracted with, or may hereafter contract with, or shall be otherwise legally ¡bound, to any parish or municipal corporation in this State, with .reference to the paving, grading, repairing, reconstructing or care -.of any street, highway, bridge, culvert, levee, canal, ditch or crossing, and shall fail or neglect to perform said contract or obligation, the said parish or municipal corporation * * shall have the right to proceed by a writ of mandamus to compel the performance of ¡said contract or obligation.” - * * *
The language of the section is not entirely free from ambiguity, •and a proper construction of its true meaning may be facilitated by considering the cause which induced the Legislature to enact it. O. 0., .Arfe. 18.
It is asserted by relator’s counsel, and we believe that the propriety and usefulness of that legislation grew out of the decision of *141 this court in the case of the State ex rel. City of New Orleans vs. the New Orleans and Carrollton Railroad Company. 87 An., p. 589.
In that case the city applied for a writ of mandamus to compel the defendant company to make certain repairs to a street in the city to which it had bound itself by contract.
The writ was refused on the main ground that “the writ of mandamus does not lie to compel corporations to perform obligations arising simply from contract.”
From the leading idea which prompted the act, it is quite apparent that its object was to extend the application of the writ as a remedy for the enforcement of contract obligations against corporations, and thus to supplement the action of such power as indicated by that decision.
The court had said that, from the nature of the writ of mandamus, and under the rules of law then in force, which controlled and restricted its application, it could not be invoked as a remedy to coerce a corporation to comply with its contract obligations, and such was the law up to the enactment of Act 183 of 1888; under its terms such obligations, contractual or otherwise, as are enumerated in the act, may now be enforced by means of the writ of mandamus. But the statute goes no further, and it does not purport to disturb any other judicial construction or exposition of the nature and scope of the writ of mandamus.
In the opinion above referred to, the court took occasion to say, on abundant legal and judicial authority:
“The writ of mandamus is the most arbitrary of all the forms hr which judicial authority is exercised, It shuts out the right of trial by jury. It substitutes for the ordinary and cautious modes of judicial proceeding, an extremely harsh and summary procedure.
“Instead of a mere judgment settling simply the rights of litigants,, and subject to execution by ordinary process, it invokes an arbitrary judicial mandate, to be executed by the judge himself, and disobedience to which is punishable by imprisonment for contempt, or by the-harsh remedy of distringas.
“ It is properly characterized as an extraordinary remedy, only to be applied in extraordinary cases, which law and jurisprudence have carefully defined and subjected to close limitations.” * * *
The language just quoted, which is but an echo of numerous adjudications previously made by this and other courts of the land, *142 •clearly justifies the conclusion that legislation which proposes to extend the application of the writ to cases hitherto not within its reach, is .a law in derogation of common right.
Now jurisprudence has securely consecrated a wise rule of construction of such laws, which has been formulated as follows:
“ It is a principle universally recognized that laws in derogation •of common rights are to be strictly construed and- can not be extended beyond their clear and precise import so as to reach persons, cases or things other than those they legally and specifically embrace. Of this character are those laws which are designed to substitute a mode of procedure in derogation of the ordinary rules of practice.” (Italics are ours). Succession of Irwin, 33 An. 68.
State vs. Schuchardt, 32 An. (not yet reported).
Hence we are not favorably impressed with the suggestion of relator’s -counsel that the statute now under discussion should be liberally construed, so as to hold that the provision which applies the use of the writ of mandamus to coerce a corporation to reconstruct a certain thing or object, necessarily implies the power to use the ¡same remedy to enforce an obligation to construct the same.
It is conceded in this case that the obligation sought to be enforced 'is to construct an embankment which has never existed, and not to .reconstruct an embankment which had once existed, but which had been destroyed or demolished. And the question, as already stated, is to determine whether, under the terms of the statute, the obligation of a corporation, flowing either from a contract or from the effect of law, to construct a new embankment or levee, can be enforced by means of the writ of mandamus.
Embankment, which is the term used in the ordinance, is not synonymous with the term levee, used in the statute.
An embankment is “ an artificial bank or mound of earth.”— (Webster.) It maybe used either exclusively as a roadway or as a railroad bed, or exclusively as a protection from overflow or as both. A levee is an artificial mound of earth intended exclusively as a protection from overflow; every levee is, therefore, an embankment, but every embankment is not a levee. It would, therefore, not be a violent presumption to hold that, in referring to a levee, the reconstruction of which, without delay, could prevent a great disaster from an overflow, the law maker did not contemplate the same hasty necessity in the case of the reconstruction of an embankment used as *143 -a roadway, which would involve only a question of use or conveni- ■ ence. But for the purposes of this discussion, counsel for the defendant consents that the terms may be used as meaning precisely the same thing.
The question therefore recurs, after that concession, which we make only for the sake of argument, as to the application of the remedy under the statute, to coerce the construction of a new levee or embankment.
Every act, as the subject of an obligation which under the .statute can be enforced by mandamus, presupposes the existence of the object or thing to be affected thereby.
It is clear, beyond question, that the word “paving” refers ex•clusively to a street, and that a street not laid out and not in existence can not be paved.
’ Conceding next that the word grading was meant by the law maker to apply to a levee, can a levee not yet constructed or thrown up, be graded? Evidently not. The verb grade is defined to mean “to reduce to a certain degree of ascent and descent, to level and prepare, as ground for placing the rails on a railroad.” — (Webster.)
As applied to a levee the operation of grading would be to reduce the mound of earth, necessarily unshapely and lacking uniformity when first thrown up, to a uniform and prescribed degree of ascent •and descent.
Of course the operation presupposes the existence of the levee or mound of earth; it may be the completion of or the finishing touch to the levee, but it can in no sense be deemed as the construction thereof.
And yet this is the only term in the statute which the city’s counsel can hold up as including the word construction within its meaning. The very reverse is the truth; the proper construction of a levee may include the grading thereof, but surely the grading oí a levee no more includes the construction thereof, than the painting ■of a house includes the construction of the same.
But in thus arguing and contending counsel for relator lose sight ■of the pleadings to which the specifications of the City Surveyor are attached as part thereof.
In that document the surveyor, after directing the mode of constructing the embankment and prescribing its dimensions, proceeds ■¡to direct that “the crown and slopes shall be neatly graded.” Mani *144 festly that officer contemplated that construction, as an independent operation, should precede grading as a finishing touch, and so did the-city’s counsel when they prepared their pleadings. Hence their-present argument must fall of its own weight.
The reasons which induced the law maker to make a distinction in-the application of the writ of mandamus between the obligation to - construct and that to reconstruct a levee are not a subject of necessary consideration in this case.
But several suggest themselves to the legal mind. As the statute was intended to affect the country parishes as well as the City of New Orleans, it occurred to the Legislature that under existing laws-the parishes have no authority touching the construction of levees, a power which is delegated to other functionaries; the duty of the ■ parishes being restricted to the repair, the preservation and protection of already constructed levees. Act 33 of 1879, Sec. 10. It was therefore clear that the parishes need not be clothed with the power ■ to enforce obligations which primarily they could not enter into.. Hence it was deemed sufficient to enable them to enforce only contracts touching the reconstruction of destroyed or damaged levees, for which they had the legal authority to stipulate.
In the reconstruction of a levee the dimensions and other requirements are known in advance, and no question affecting the same could arise between the contracting parties, and hence such a reconstruction was deemed a well defined, indisputable and clear obligation, falling within the well understood scope of the writ of mein— damus, and this would not be the case with a new construction, as. illustrated by this very cause, in which it appears that the dimensions of the contemplated work were ’left to the judgment, discretion and direction of the City Surveyor.
' We therefore conclude that the District Judge committed no error-in maintaining defendant’s exception.
Judgment affirmed.